EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii

MICHAEL K. KAWAHARA  1460
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Mike.Kawahara@usdoj.gov

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 02-0099ACK |
| | ) | |
| Plaintiff, | ) | RESPONSE TO DEFENDANT LARON |
| | ) | KORTGAARD'S REQUEST FOR BRADY |
| VS. | ) | MATERIAL |
| | ) | |
| LARON KEVIN KORTGAARD, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**RESPONSE TO DEFENDANT LARON KORTGAARD'S
REQUEST FOR BRADY MATERIAL**

While the United States seriously questions whether the identified materials constitute "Brady material", we make the following response to defendant's request filed February 1, 2006.

1. <u>Any and all photographs and/or videotapes that were taken on or about March 13, 2002 of the two marijuana patches that were referenced in the declaration of John P. Akers on or about March 15, 2002</u>: pursuant to F.R.Cr.P. 16, defendant has already received, through his prior defense counsel, Assistant

Federal Public Defender Michael Weight, copies of digital and conventional photographs taken by the National Park Service (NPS) Rangers of marijuana patches #1, #2, and #3.  This included photographs that would have been taken on March 13, 2002.  In point of fact, one of these 3/13/02 photographs (depicting patch #1) was introduced at trial as Govt Ex. 107, through the testimony of NPS Ranger Akers.  See T.P.(5/22/02) at 2-88/89.

 2. <u>All unedited videotapes and/or photographic images of the marijuana patches that were not shown to the jury at the trial in this matter</u>: With respect to photographs, we refer defendant to our prior response in subparagraph 1.  With respect to videotapes, we presume that defendant is referring to the hidden camera that NPS Agent Judd had emplaced at various times in the marijuana patches and which was remotely triggered by infrared, motion, and/or seismic sensors.  As will be discussed below, these videotapes were admitted as Government trial exhibits and were consequently available to defendant, both during and prior to the trial.

 -We refer defendant to the trial transcript, specifically T.P.(5/23/02) at 3-28/30, and Govt Ex. 109a and 109b.  As testified-to by NPS Agent Judd, Govt Ex. 109a were the original videotapes taken from the remote camera in the field.  There were only three instances in which a person (other than the NPS Rangers when they were examining the patches) was visible on

2

these videotapes, these being on February 27, March 9, and March 15, 2002 and all occurring in patch #1; Govt Ex. 109b was a composite videotape of these three occasions, which had been prepared by Agent Judd.  The person's identity was not readily apparent on the first two occasions (February 27 and March 9)-- although there were certain similarities to defendant.  However, on the third occasion (March 15), the person depicted was clearly identifiable as defendant.

    -We also question the relevancy of defendant's instant request, given the strategic and tactical decisions he made during the trial which we believe should now foreclose his belated attempt to now undermine his conviction.  As the Court may recall, defendant had attempted to claim an "alibi"-type defense at trial, based upon the prosecution's delayed disclosure of the sensor log, i.e., that persons other than himself were allegedly cultivating the patches.  He also initially had sought a mistrial, based upon the late disclosure.  However, after being given a one week trial recess to evaluate the log and other evidence (which, of course, would have included the aforesaid trial exhibits), having the opportunity to consult with his own defense expert regarding these matters, and being able to interview NPS Agent Judd at length,[1] defendant affirmatively withdrew his mistrial motion and elected to proceed with the

---

[1] See T.P.(5-30-02) at 4-6 and 4-8/9.

3

trial.[2]  In its "Order Denying Defendant's Motion for New Trial" entered 7/26/02, this Court analyzed defendant's aforesaid conduct during the trial as follows:

> The Court finds that several benefits inured to Defendant as a result of the events surrounding the Government's late disclosure of the log.  First, Defendant was able, through the joint stipulation regarding the dates that Defendant was out of the area, to present exculpatory evidence to the jury without having to testify.  Second, Defendant was afforded six days after [NPS Agent] Judd's direct examination to prepare for his cross-examination.  Third, the jury was told that the delay in the trial resulted from the Government's failure to timely deliver the log.  Lastly, the defendant was granted additional discovery.  <u>In sum, the Court finds that Defendant made a tactical decision based upon the above-referenced benefits to withdraw his motion for mistrial</u>. [emphasis added]

Clearly, these advantages to the defense noted by the Court applied directly to the instant trial and would have been dissipated had the Court granted a new trial in accordance with his earlier request.  This is why this Court characterized defendant's decision to proceed with the current trial as "tactical".  Defendant can hardly now be permitted to un-do that tactical decision he consciously made.

    3.  Paragraph 3 of defendant's request dealt with defendant's prior arrest in February 1992 by Hawaii County Police Department (HCPD) officers for a marijuana cultivation operation then being conducted in Polulu Valley on the big island.  It

---

[2] Defendant himself said in open court that he agreed with his defense attorney's decision to withdraw the mistrial motion.  T.P.(5-30/02) at 4-120.

should be noted that this offense was not charged in the instant Federal case and only came up during the sentencing phase because the Probation Office mentioned it in paragraph 48 of the presentence report.  Consequently, the U. S. Attorney's Office currently does not have any HCPD records or reports pertaining to this 1992 arrest and there is nothing to disclose.

-In this connection, too, we also question the sincerity and genuineness of defendant's rather tardy request concerning his 1992 HCPD arrest.  Defendant has been twice convicted in Federal District Court, the first being in USDC-Hawaii Criminal No. 93-0170ACK for heroin importation (for which he received a ten year imprisonment sentence), and most recently in the above-captioned case.  This very same 1992 HCPD arrest for marijuana cultivation was expressly mentioned in paragraph 68 of the presentence report prepared in 1994 in Criminal No. 93-0170ACK and was not objected-to by defendant in that earlier case.  Likewise, defendant did not object to paragraph 48 of the presentence report prepared in the instant case, which again referenced this very same 1992 HCPD arrest.

DATED: Honolulu, Hawaii, February 3, 2006.

                                      EDWARD H. KUBO, JR.
                                      United States Attorney

                                      By /s/ Michael K. Kawahara
                                          MICHAEL K. KAWAHARA
                                          Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

      I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

Served Electronically through CM/ECF:

   Mr. David F. Klein   dk@thedefense.com   February 3, 2006

                              /s/ Rowena N. Kang