IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

UNITED STATES OF AMERICA,   )   CIVIL NO. 06-0331ACK
   )   CR. NO. 02-0099ACK
              Plaintiff,   )
   )
       VS.   )
   )
LARON KEVIN KORTGAARD,   )
   )
           Defendant.   )
_____)

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S 2255 PETITION**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**

**DECLARATION OF MICHAEL A. WEIGHT**


EDWARD H. KUBO, JR. 2499
United States Attorney
District of Hawaii

MICHAEL K. KAWAHARA 1460
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850

Attorneys for Plaintiff
United States of America

Table of Contents

Page(s)

Table of Authorities . . . . . . . . . . . . . . . . . . . . . i

I.     RELEVANT PROCEDURAL AND BACKGROUND INFORMATION . . . . . 1

II.    TRIAL EVIDENCE RELEVANT TO DEFENDANT'S 2255 PETITION . . 4

III.   THE BASIS OF DEFENDANT'S SO-CALLED ALIBI DEFENSE . . . . 7

IV.    THE JURY'S DELIBERATIONS . . . . . . . . . . . . . . . . 12

V.     THERE WAS NO INEFFECTIVE ASSISTANCE OF DEFENSE
       COUNSEL BY EITHER MR. WEIGHT OR MR. KLEIN
       IN THIS CASE . . . . . . . . . . . . . . . . . . . . . . 13

       A.  The Legal Standard . . . . . . . . . . . . . . . . . 13

       B.  Mr. Weight's strategic decision not to request
           an alibi jury instruction was well-within
           Strickland's "wide range of reasonably professional
           assistance" . . . . . . . . . . . . . . . . . . . . 14

       C.  Under the circumstances of this case, it was
           premature to give an Allen charge to the jury,
           and there consequently was no ineffective
           assistance of counsel when Mr. Weight never sought
           such an instruction at this time . . . . . . . . . 17

       D.  There was no error, much less any ineffective
           assistance of counsel, involved in the District
           Court's discretionary decision to make defendant's
           imprisonment sentence in the underlying criminal
           case consecutive to that imposed in the TSR
           revocation . . . . . . . . . . . . . . . . . . . . 19

VI.    THIS COURT HAD NO SUA SPONTE OBLIGATION TO
       INSTRUCT THE JURY ON ALIBI IN THE ABSENCE OF A DEFENSE
       REQUEST THEREFOR . . . . . . . . . . . . . . . . . . . . 21

VII.   THIS COURT CORRECTLY INSTRUCTED THE JURY ON
       CIRCUMSTANTIAL EVIDENCE . . . . . . . . . . . . . . . . 22

VIII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 23

Table of Authorities

Cases                                                    Page(s)

Allen v. United States,
        164 U.S. 492 (1896) . . . . . . . . . . . . . . . 17, 18

Bean v. Calderon,
        163 F.3d 1073 (9th Cir. 1998) . . . . . . . . . . 16

Clabourne v. Lewis,
        64 F.3d 1373 (9th Cir. 1995) . . . . . . . . . . . 15

Correll v. Stewart,
        137 F.3d 1404 (9th Cir. 1998),
        cert. denied, 119 S.Ct 450 . . . . . . . . . . . . 16

Strickland v. Washington,
        466 U.S. 668 (1984) . . . . . . . . . . . . . . . 13, 14

United States v. Arellano-Torres,
        303 F.3d 1173 (9th Cir. 2002) . . . . . . . . . . 19, 21

United States v. Claibourne,
        870 F.2d 1463 (9th Cir. 1989) . . . . . . . . . . 14

United States v. Hairston,
        64 F.3d 491 (9th Cir. 1995) . . . . . . . . . . . 21

United States v. Kortgaard,
        425 F.3d 602 (9th Cir. 2005) . . . . . . . . . . . 2

United States v. Martinez,
        883 F.2d 750 (9th Cir. 1989),
        op. vacated on oth. Gds, 928 F.2d 1470,
        cert. denied, 501 U.S. 1249. . . . . . . . . . . . 14

United States v. Steele,
        298 F.3d 906 (9th Cir. 2002) . . . . . . . . . . . 18

Rules and Statutes

18 U.S.C. 3553(a)  . . . . . . . . . . . . . . . . . . . 2

F.R.Cr.P. 12.1 . . . . . . . . . . . . . . . . . . . . . 7

## MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S 2255 PETITION

The United States of America hereby opposes defendant's 2255 petition filed June 20, 2006.

I.  **RELEVANT PROCEDURAL AND BACKGROUND INFORMATION:**

In the instant, underlying criminal case (USDC-Hawaii Criminal No. 02-0099ACK), defendant Kortgaard was convicted, after a jury trial in May - June 2002, of manufacturing marijuana, to wit: the cultivation of fifty (50) or more marijuana plants.  This crime involved defendant's growing of approximately sixty-five (65) marijuana plants in three separate locations in close proximity to each other in Volcanoes National Park on the Island of Hawaii (referred-to at trial and the subsequent direct appeal as Patches #1, #2, and #3).

Defendant had previously been convicted of heroin importation in an earlier Federal case (USDC-Hawaii Criminal No. 93-01704ACK), for which he was sentenced to ten years imprisonment, followed by a term of supervised release ("TSR") of eight years (hereinafter "prior heroin conviction").  Inasmuch as defendant had committed the instant marijuana manufacture crime while on TSR from the prior heroin conviction, the Probation Office also moved to revoke the same.  Both the TSR revocation action and the instant underlying criminal case were assigned to Senior United States District Judge Kay.  This Court thereafter sentenced defendant, under the pre-Booker rules applicable at

that time, to 46 months imprisonment in the criminal case, and a consecutive 46 month incarceration term for the TSR violation.

In the ensuing direct appeal (C.A. No. 03-10421), the Ninth Circuit affirmed defendant's conviction in an unpublished memorandum opinion filed January 11, 2005.  In so ruling, the Ninth Circuit made the following observation which is directly pertinent to defendant's contentions in his 2255 petition:

> We find the evidence sufficient to sustain the conviction. Kortgaard admits visiting the marijuana patches on numerous occasions, and a reasonable jury could find that distinctive markings on certain water bottles and planting trays found initially at the patches and later in Kortgaard's possession established a direct link between Kortgaard and the actual cultivation operation.  Additional circumstantial evidence further supports the conviction.

Memorandum Opinion at 2-3 [emphasis added].

However, in a later published opinion, United States v. Kortgaard, 425 F.3d 602, 611 (9th Cir. 2005), and in the light of the Supreme Court's Booker case invalidating the mandatory nature of the Sentencing Guidelines, the Ninth Circuit reversed defendant's sentence, with the express instruction on remand for the District Court to ". . . resentenc[e] [him] under the now-advisory Guidelines regime".

This Court, utilizing the 18 U.S.C. 3553(a) factors and the Guidelines in a purely advisory manner, subsequently sentenced defendant to the same 46 month sentence in the criminal case on March 14, 2006, also holding that it remained consecutive to the

2

sentence previously imposed (and never appealed) in the TSR
revocation action.

Defendant thereafter appealed his new sentence, but then
voluntarily dismissed that appeal.

Assistant Federal Public Defender Michael A. Weight
represented defendant in the trial and first sentencing in 2002.
Thereafter, David Klein, Esq., was appointed to represent
defendant during the first appeal and at his re-sentencing after
the remand.  In his 2255 petition, defendant has accused both
attorneys (in particular, Mr. Weight) of ineffective assistance
of defense counsel.

In analyzing defendant's contention with respect to
Mr. Weight, the Court should also note that the record in both
the underlying criminal case and the prior heroin conviction
clearly demonstrated a long-time attorney-client relationship
between Mr. Weight and defendant while the former was in private
practice.  In the prior heroin conviction, Mr. Weight was
defendant's retained attorney for a period of time and he also
concurrently represented defendant at that time in a separate
state criminal matter.[1]

---

[1] Defendant's written plea agreement filed November 20, 1993
in the prior heroin conviction provided as follows on page 3:

Prior to Mr. Barbee's entry into this case [as defense
counsel], defendant was represented herein by Michael
Weight, Esq., who had previously proposed to the Government
(continued...)

II.  **TRIAL EVIDENCE RELEVANT TO DEFENDANT'S 2255 PETITION**:

As the Court may recall, there was substantial evidence demonstrating that defendant cultivated the marijuana plants in patches #1, #2, and #3 during the charged period December 27, 2001 - March 15, 2002.[2]  First, National Park Rangers had "staked out" Patch #1 during the daylight hours on March 13, 14, and 15, 2002.  They had actually seen defendant go to Patch #1 on March 15, and he subsequently attempted to flee from them.  T.P. at 2-94/6, 3-35/40.

Second, as will be discussed in further detail later in this memorandum, remote sensing devices had previously been emplaced

_____

[1](...continued)
a resolution of the instant case substantially similar to that contained in this Agreement.  Defendant also affirms that he is fully satisfied with the legal advice and representation by Mr. Weight during his time as defendant's attorney in this case.

Footnote 1 to this same plea agreement at page 1 also stated:

In this connection, defendant affirms that Mr. Weight still remains his defense counsel in an unrelated, currently-pending State criminal prosecution on the Island of Hawaii.

A copy of this plea agreement was previously included as Exhibit "1" to the United States' "Motion for Upward Departure for Significantly Under-Represented Criminal History Category" filed in the underlying criminal case on August 12, 1992.

[2] Count 1 of the Indictment charged as follows:

During the period on or about December 27, 2001 to on or about March 15, 2002, defendant Laron Kevin Kortgaard knowingly and intentionally manufactured marijuana, to wit: the cultivation of fifty (50) or more marijuana plants, a Schedule I controlled substance . . . . [emphasis added]

4

in Patch #2 and along the trail leading to Patch #1, which would be activated by either ground movement (seismic), motion (infrared), the presence of metal (magnetic), or a combination thereof.  T.P. 3-3/5, 3-98/106.  Immediately prior to seeing defendant in Patch #1 on March 15, the Rangers' handheld receiver indicated that the sensor in Patch #2 had been activated and then shortly thereafter, the sensor on the trail leading to Patch #1 went off.  T.P. at 2-93/4, 3-32/4.  The chronology of these sensor activations, followed-up with defendant's appearance, indicated that defendant had first gone to Patch #2 and then to Patch #1, that is to say, that his presence in these marijuana patches was purposeful and not innocent nor an accident.

Third, defendant made highly incriminatory post-arrest statements to a DEA Agent on March 15, which indicated he had visited these marijuana patches on more than one occasion. Defendant advised that prior to March 15, he had gone to Patch #1 at least three times and to Patch #2 a couple of times. Defendant also said he touched the marijuana plants in the past and that he had noticed the plants were growing larger and were "budding" (defendant's own words).  T.P. at 4-97/8.

Fourth, certain marijuana cultivation paraphernalia which had been seen and photographed in Patches #1 and #2 when the Rangers first examined these sites on December 27, 2001 were subsequently recovered from defendant's residence after his

arrest on March 15.  For example, the Rangers had earlier photographed in Patch #2 a plastic "Hawaiian Mist" water jug with a distinctive, partially ripped-off price tag; this same jug was recovered from defendant's pickup truck on March 15 (which was parked at his residence).[3]  T.P. at 2-84/5, 2-96/7, 2-117/8, 2-200/3, 3-50/5, 3-64/6.  Additionally, the Rangers had photographed in Patch #1 on 12/27/01 a stack of plastic growtrays.[4]  These growtrays had distinctive drain hole patterns, by which they could be identified.  T.P. at 2-79/84, 2-188/193, 2/213.  Fifteen used growtrays were subsequently recovered from defendant's residence, and one of them matched the drain hole pattern of that previously seen in Patch #1.  T.P. T.P. at 2/102-6, 3-80/3.

Fifth, defendant was in possession of "High Times" magazines at his residence and other typical paraphernalia typically utilized in marijuana cultivation in his vehicles.  T.P. at 2-13/6, 2-74/5, 2-96/7, 2-100/1, 2-109/110, 2-116/122, 3-47/73.

---

[3] Given that the marijuana patches were present in an arid area, water would have to be transported to and from the sites in order to irrigate the plants, as for example, in such plastic jugs.  T.P. at 2-67.

[4] Such growtrays would be utilized as starter trays to sprout marijuana seedlings.  As one of the Rangers testified: "They're used to start the seeds into seedlings.  When the plants get big enough to survive out of their own, they're removed from there and put in the ground".  T.P. at 2-190.

6

And lastly, in 2001 - 2002, defendant resided in Mauna Loa Estates, just outside of the national park and more importantly, only about twelve miles away from the marijuana cultivation site. T.P. at 2-49, 2-96/7.

III.  **THE BASIS OF DEFENDANT'S SO-CALLED ALIBI DEFENSE:**

Defendant never filed a written Notice of Alibi, as would otherwise be required by F.R.Cr.P. 12.1.  In other words, defendant never contemplated an alibi defense prior to trial.

Defendant's proposed reliance upon "alibi" only arose during the course of trial, due to the United States' failure to produce an activation log for the remote sensing devices emplaced by the Park Rangers in or around Patches #1 and #2 to detect activity therein.  When these devices were triggered, they transmitted a radio signal which would be picked up by Agent Judd's handheld receiver and by a computer maintained at the Agent's home.  That computer also generated a log of sensor alerts, which Agent Judd admitted were not disclosed to anyone prior to trial, including the United States Attorney's Office.  T.P. at 2-221/4, 3-3/12, 3-33, 3-98/106.  Upon learning of this log, defendant then moved for a mistrial, asserting that this log could have assisted in an "alibi" defense, i.e., to the effect that unknown persons were cultivating the marijuana patches (as circumstantially evidenced by the log's sensor activation entries) while defendant was off-island.

7

Defendant subsequently received a copy of the log, and the trial was continued for about a week to allow defendant additional time.  T.P. 3-108/111.

One of the major results of the foregoing one-week trial continuance was the entry of both sides into the following trial stipulation, which was subsequently read to the jury (T.P. at 4-127):

> Defendant was continuously present on the island of Oahu on December 30, 2001 and January 9, 2002, to attend to personal business concerning his father.
>
> Defendant was continuously present on the island of Oahu on February 15th, 16th, and 17th, 2002, and on March 2, 2002, for the purpose of coaching tennis matches.
>
> On March 9th and 10th, 2002, Saturday and Sunday, defendant was on the island of Hawaii.  Defendant drove to Kawaihae on Saturday afternoon and stayed over that Saturday night with his friend, Mr. Wright, on Mr. Wright's sailboat in Kawaihae.

Moreover, after having the opportunity to review this log, defense counsel Michael Weight, with the express concurrence of defendant, formally withdrew his mistrial motion.  T.P. at 4-119/122.[5]

---

[5] As this Court aptly noted in its subsequent "Order Denying Defendant's Motion for New Trial" filed July 26, 2002, at pages 9 - 10:

> The Court finds that several benefits inured to Defendant as a result of the events surrounding the Government's late disclosure of the Log.  First, Defendant was able, through the joint stipulation regarding the dates that Defendant was out of the area, to present exculpatory evidence to the jury without having to testify.  Second, Defendant was afforded
>
> (continued...)

8

At the outset, it should be noted that the charge of which defendant was convicted alleged a course of conduct of marijuana manufacture over an approximately three month period from December 27, 2001 (when the Rangers first examined the marijuana patches) until March 15, 2002 (when defendant was present in Patch #1 and was thereafter arrested). Consequently, unless the evidence presented at trial established that defendant was never present at any time during the charged three month period, "alibi" would hardly be a viable or practicable defense theory.[6]

─────────────────

[5](...continued)
six days after Judd's direct examination to prepare for his cross-examination. Third, the jury was told that the delay in the trial resulted from the Government's failure to timely deliver the Log. Lastly, Defendant was granted additional discovery. In sum, the Court finds that Defendant made a tactical decision based upon the above-referenced benefits to withdraw his motion for mistrial.

In its memorandum opinion, the Ninth Circuit subsequently held that:

. . . the district court did not err in denying Kortgaard's mistrial and new trial motions based on an alleged [Brady] violation. . . . Because Kortgaard was not prejudiced, there is no Brady violation in the prosecution's failure to produce the sensor logs until late in the trial. The various remedial measures granted by the district court provided Kortgaard with an adequate opportunity to consider and address the evidence and benefitted him in various other ways that would not have available during a retrial.

Memorandum Opinion at 2.

[6] The Ninth Circuit's alibi jury instruction reads as follows:

Evidence has been introduced that the defendant was not
                                              (continued...)

9

Furthermore, most, if not all, of the remote sensor activity reported in the log occurred when defendant was physically present on the island of Hawaii and consequently had the opportunity to commit the crime.  In his closing argument, defendant could only point to one day of significant sensor log activity in the marijuana patches-- February 17, 2002-- which could not be attributed to defendant because, as indicated in the trial stipulation, he was off-island coaching an "away" tennis match.  T.P. at 5-85/6.  However, the possibility still existed that another person was aiding and abetting defendant during his short absence.

More importantly, defendant was on-island on February 13, 27, and March 9, 2002, at times when the log's sensor entries could be directly attributed to human presence and activity there (other than the Rangers when they were examining the marijuana patches), as follows:

(1) <u>Night of February 13</u>: after dark, Agent Judd saw a pickup truck (which like defendant's, had a camper top) head on Powerline Road towards the patches.  The remote sensors indicated continuing activity in Patch #1 (which Agent Judd could detect through his handheld receiver).  On the following day,

---

[6](...continued)
present <u>at the time and place of the commission of the crime charged</u> in the indictment.  The government has the burden of proving beyond a reasonable doubt the defendant's presence at that time and place [emphasis added].

10

Agent Judd examined Patch #1 and discovered that the marijuana plants there had just recently been watered.  T.P. at 3-10/3.

(2) February 27, about 9:30 - 9:34 a.m.: A hidden video camera triggered by a remote sensor recorded an unknown person (but having defendant's slim body build) tending to the marijuana plants in Patch #1.  See Govt Ex.109b.[7]

(3) March 9, about 12:10 - 12:15 p.m.: The remote video camera recorded an unknown person with defendant's body build examining the marijuana plants in Patch #1 during this period of time.  See Govt Ex. 109b.

With respect to subparagraph (3) above, according to the trial stipulation, defendant had  ". . . [driven] to Kawaihae on Saturday afternoon [March 9] and stayed over that Saturday night with his friend . . . ."  However, given that his residence was a mere 12 miles away from the marijuana patches, this hardly provided defendant with an "alibi" for March 9, since he could easily have spent several minutes just after 12:00 noon tending to his marijuana plants in Patch #1 and then, consistent with the stipulation, thereafter proceeding to Kawaihae to spend the rest of the afternoon and the next day with his friend.

The bottom line is that given the foregoing, it was highly unlikely for defendant to prevail on basis of "alibi".  Moreover,

---

[7] This exhibit was the videotape played at trial; the date and times indicated herein were reflected in the videotape's date/time counter).

that defendant had admitted to a DEA Agent that he had visited Patches #1 and #2 on multiple occasions and knew when the marijuana plants were "budding" substantially contradicted the validity of any "alibi" contention.

Additionally, at defendant's request, the Court gave the following "theory of the defense" instruction to the jury (T.P. at 5-41):

> Jury Instruction Number 20: The theory of the defense case is that the defendant was hiking on a marked trail in the area of Hawaii Volcanoes National Park off Mauna Loa Strip Road and his mere presence in the area when he came upon the marijuana patch does not mean that he manufactured or possessed any of the marijuana in the patch located right off the marked hiking trail he was on.

Defendant's primary trial defense of "mere presence" would be substantially undercut and rendered more unbelievable if he concurrently and inconsistently claimed "alibi", i.e., that he was not there.

## IV.  **THE JURY'S DELIBERATIONS**:

The jury first commenced deliberating during the mid-afternoon of Friday, May 31, 2002.  T.P. at 5-110.  Deliberations re-commenced on Monday, June 3, 2002.  At about 11:30 a.m. on June 3, the jury foreperson sent a note to the Court stating: "The jury cannot reach a unanimous agreement; the jury is hung. Please provide further instructions".  After consultation with and obtaining the concurrence of the parties, the Court sent the following letter dated June 3, 2002 back to the jury:

This is in response to your note as of 11:30 a.m. on Monday, June 3, 2002: [The Court then quoted the jury's note, as set forth above]

This trial lasted six days, over a two week period, and this was supposed to be your first full day of deliberations. The Court will allow you to leave early today, right after lunch, with one of the jurors having requested to leave early in view of a prior school appointment.[8]  You are to continue your deliberations at 9:00 a.m. tomorrow.

At about noon on Tuesday, June 4, 2002, the jury returned its verdict of guilty as to the marijuana manufacturing count.  T.P. at 7-3.

**ARGUMENT**:

**V.  THERE WAS NO INEFFECTIVE ASSISTANCE OF DEFENSE COUNSEL BY EITHER MR. WEIGHT OR MR. KLEIN IN THIS CASE.**

    A.  The Legal Standard:

    In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to evaluate ineffective assistance of counsel claims.  The defendant must prove: first, that his counsel's performance fell below an objective standard of reasonableness, and second, that counsel's deficient performance actually prejudiced the defendant.

    Under the first prong, there is a "strong presumption" that defense counsel's strategy and tactics fell "within the wide range of reasonable professional assistance.  Strickland, 466

---

    [8] In another written note received earlier on June 3, one of the jurors said that she had a pre-arranged meeting at Pearl City Elementary School regarding her son, which was difficult to re-schedule.

13

U.S. at 689.  The Ninth Circuit has further clarified this to mean that ". . . a reviewing court is not free to engage in after-the-fact second guessing of strategic decisions made by defense counsel.  Instead, judicial scrutiny of 'counsel's performance must be highly deferential' [quoting from Strickland]".  United States v. Claibourne, 870 F.2d 1463, 1468 (9th Cir. 1989).

With respect to the second prong of prejudice, the Supreme Court in Strickland further stated that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different".  466 U.S. at 694.

B.  Mr. Weight's strategic decision not to request an alibi jury instruction was well-within Strickland's "wide range of reasonably professional assistance".

We preliminarily begin this analysis with this Court's prior recognition that defense attorney Michael Weight is "one of the most competent lawyers practicing before it".  United States v. Martinez, 883 F.2d 750, 755 (9th Cir. 1989), op. vacated on oth. Gds, 928 F.2d 1470, cert. denied, 501 U.S. 1249.[9]  It is,

_____

[9] As documented by the Ninth Circuit in the Martinez case:

. . . Michael A. Weight [is] a native of Hawaii educated at the University of Rochester and Vanderbilt University Law School, from which he graduated in 1967.  From 1969 to 1974, he was a Deputy Prosecuting Attorney in Honolulu and in 1976 he was a Special Assistant Attorney General.  He is a member of the state bar and of the bars of the district court in
(continued...)

therefore, no wonder why defendant herein previously retained
Mr. Weight for two separate cases in the past, i.e., the prior
heroin conviction and the other unrelated state criminal case on
the island of Hawaii.

Ninth Circuit law is clear that a defense counsel's decision
not to pursue or emphasize a particular trial defense will not
constitute ineffective assistance of counsel if that would either
conflict with or detract from another primary trial defense or
the overall defense strategy.  For example, in <u>Clabourne v.
Lewis</u>, 64 F.3d 1373, 1382-3 (9th Cir. 1995), the defendant
complained that his defense attorney did not request a
voluntariness jury instruction with respect to his <u>post</u>-arrest
statement to the police.  In rejecting this allegation, the Ninth
Circuit said:

> [Defense counsel] did not argue to the jury that Clabourne's
> confession was involuntary. [citation omitted]  Clabourne
> would certainly want to challenge the voluntariness (and
> thus the accuracy) of his confession if he was pursuing a
> reasonable doubt defense.  But Clabourne was pursuing an
> insanity defense, and that defense might have been less
> credible if Clabourne had disavowed his confession.  The
> district court correctly concluded that the failure to
> request a voluntariness instruction was a tactical decision
> and so did not amount to ineffective assistance of counsel.

---

[9](...continued)
Hawaii, the Ninth Circuit, and th Supreme Court of the
United States.

883 F.2d at 752.

15

By like token, in <u>Bean v. Calderon</u>, 163 F.3d 1073, 1081-2 (9th Cir. 1998), the Ninth Circuit held that there was no ineffective assistance associated with the defense counsel's decision not to pursue a diminished capacity defense because it would have conflicted with the primary defense theory of alibi.  And in <u>Correll v. Stewart</u>, 137 F.3d 1404, 1411 (9th Cir. 1998), <u>cert. denied</u>, 119 S.Ct 450, the Ninth Circuit opined:

> Under this standard, Correll's allegation of ineffectiveness for failing to develop a mens rea defense, even if proven, does not support a colorable claim.  This defense would have conflicted with the primary defense theory of misidentification.  Thus, it was within that broad range of professionally competent assistance for Correll's attorney to choose not to present psychiatric evidence which would have contradicted the primary defense theory.

We submit that it was clearly inferrable from the Record herein that a tactical decision had been made not to rely upon the alibi defense.  Given that defendant, by his own admission, was present in the marijuana patches on more than one occasion prior to his arrest date, an alibi instruction would highlight and call into question the defense's sincerity before the jury.

Mr. Weight's appended Declaration merely confirmed this inference arising from the Record, wherein he stated:

> 3.  Mr. Kortgaard had made it clear to me that he desired to go to trial and that he was unwilling to consider any plea alternative.  In my pretrial planning for defendant's trial defense, I did not consider an alibi defense to be feasible, because defendant was actually present in Marijuana Patch #1 on March 15, 2002 (caught on videotape) and in addition, defendant had allegedly made <u>post</u>-arrest admissions to a DEA Agent that he had gone to Marijuana Patch #1 on at least three prior occasions and to Marijuana Patch #2 a couple of

16

times. Given that there would be trial testimony that defendant was actually "present" several times in the marijuana patches, I elected, with defendant's express concurrence, to proceed on a "mere presence"/reasonable doubt theory of defense. This was reflected in the "theory of defense" jury instruction which I requested.

4. The defense trial strategy changed somewhat during the trial after discovery of the Government's failure to provide the sensor log in a timely fashion. However, after having a trial continuance of about a week to thoroughly examine the log, I came to the conclusion that it would not establish a viable alibi defense. In addition to the considerations previously discussed, there were many instances of activity recorded by the sensors within and around the marijuana patches when defendant was "on-island" (and he only lived about 12 miles away from the patches). That is to say, the Government's failure to produce that log in a timely manner allowed other defense theories to be argued to the jury, as e.g., being permitted by the Court to hold this against the prosecution and to demonstrate the incompleteness and incompetence of the investigation. However, as a tactical matter, the problem still remained that there was considerable trial evidence that defendant was "present". Consequently, I decided not to request an alibi instruction, so as to avoid having this defense contradict or otherwise detract from the defense presentation as a whole.

Based upon the foregoing cases, Mr. Weight's tactical decision under the circumstances of the instant case did not, as a matter of law, amount to ineffective assistance of counsel.

C. <u>Under the circumstances of this case, it was premature to give an Allen charge to the jury, and there consequently was no ineffective assistance of counsel when Mr. Weight never sought such an instruction at this time</u>.

As hereinbefore indicated, the jury advised in a note that it could not reach a unanimous verdict after less than one full day of deliberations. Neither the prosecution nor the defendant ever requested at this juncture that the Court encourage the jury to reach a verdict through the so-called <u>Allen</u> charge (<u>Allen v.</u>

17

<u>United States</u>, 164 U.S. 492, 501 (1896)).  Instead, the Court politely reminded the jurors in its reply letter that given the trial's duration, it had hardly spent much time deliberating. And as things turned out, the jury came to its own unanimous verdict on the following day, without any further assistance.

Defendant's 2255 petition asserted that he was "prejudiced by trial judge . . . not supplementing the jury with 'Allen charge" instructions upon jury deadlock".  This contention is without merit.  Under the circumstances herein, it would have been premature to give the <u>Allen</u> charge.  The written commentary to Ninth Circuit Model Criminal Instruction 7.7 (entitled "deadlocked jury", which is this Circuit's suggested version of the <u>Allen</u> charge) states that "[t]he Committee recommends that a supplemental instruction to encourage a deadlocked jury to reach a verdict should be given with great caution".  In <u>United States v. Steele</u>, 298 F.3d 906, 911 (9th Cir. 2002), the Ninth Circuit reiterated that "[a]n <u>Allen</u> charge should be give only when it is apparent to the district court from the jury's conduct or length of deliberation that the charge is clearly warranted".  The concern, of course, is that such a judicial exhortation to reach a unanimous verdict could be viewed as impermissibly coercive.

Moreover, that the jury was able to come to a unanimous verdict on its own in a timely fashion was hardly prejudicial to defendant.

18

D. <u>There was no error, much less any ineffective assistance of counsel, involved in the District Court's discretionary decision to make defendant's imprisonment sentence in the underlying criminal case consecutive to that imposed in the TSR revocation</u>.

As hereinbefore indicated, defendant never appealed his 46 month imprisonment term adjudged in the TSR revocation action in the prior heroin conviction. As the Court is aware, the basis of that revocation action was defendant's commission, while on TSR, of the marijuana manufacture crime charged in the underlying criminal case herein. In his 2255 petition, and relying upon Guideline 5G1.3(b), defendant has asserted that this Court could not impose consecutive sentences for the underlying criminal case and the TSR revocation.

The case of <u>United States v. Arellano-Torres</u>, 303 F.3d 1173, 1180-1 (9th Cir. 2002), is dispositive and entirely contrary to defendant's contention. In that case, Arellano had committed the Federal crime of illegal re-entry while he was on probation for an earlier state conviction. As a result thereof, Arellano's probation had been revoked and at the time of his Federal sentencing, he was then serving a 12 - 48 month state prison term. The District Court elected to impose a consecutive sentence because Arellano had committed this federal crime while on state probation. On appeal, the Ninth Circuit affirmed, finding that the only portion of Guideline 5G1.3 which applied to Arellano was subsection (c) and Application Note 6 thereto (both

19

provisions authorized discretionary, consecutive sentencing).

Guideline 5G1.3(c) stated that:

> (c) (Policy Statement) In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

The Ninth Circuit also expressly noted that Application Note 6 to

this Guideline aptly addressed Arellano's situation, as follows:

> 6. *Revocations*. If the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense, and has had such probation, parole, or supervised release revoked, the sentence for the instant offense should be imposed to run consecutively to the term imposed for the violation of probation, parole, or supervised release. [emphasis added]

Application Note 6 itself also cross-referenced Guideline 7B1.3,

the latter of which was a policy statement pertaining to Federal

TSR revocations.  Consistent with Application Note 6, Guideline

7B1.3(f) stated that:

> Any term of imprisonment imposed upon the revocation of probation or supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of probation or supervised release.[10]

---

[10] Application Note 4 to Guideline 7B1.3 went further to also indicate that: "Similarly, it is the Commission's recommendation that any sentence of imprisonment for a criminal offense that is imposed after revocation of probation or supervised release be run consecutively to any term of imprisonment upon revocation".

Given the re-sentencing mandated herein by the Ninth Circuit, the
(continued...)

The bottom line for the Ninth Circuit in <u>Arellano</u> was that ". . . Arellano's consecutive sentence also withstands his various allegations of error".  303 F.3d at 1182.

Based upon <u>Arellano</u>, it is clear that this Court was fully authorized under the Guidelines to impose consecutive sentences in this case.  There was neither error associated therewith, nor any conceivable ineffective assistance of counsel bearing on this issue.

**VI.  THIS COURT HAD NO <u>SUA</u> <u>SPONTE</u> OBLIGATION TO INSTRUCT THE JURY ON ALIBI IN THE ABSENCE OF A DEFENSE REQUEST THEREFOR.**

Under Ninth Circuit law, an alibi instruction should be only given if there is evidence to support the theory and <u>the defendant requests it</u>.  <u>See, e.g.</u>, <u>United States v. Hairston</u>, 64 F.3d 491, 494 (9th Cir. 1995).  As defendant implicitly conceded in his 2255 petition by alleging ineffective assistance of defense counsel in connection therewith, there was never any defense request during the trial for the alibi instruction.  As hereinbefore indicated, there were many sound reasons why a seasoned defense attorney as Mr. Weight would not want such an instruction to be given under the facts of this case.  In short, the Court committed no error by not giving such an instruction on its own initiative.

---

[10](...continued)
situation envisioned in Application Note 4 reflects the circumstances of the instant case.

VII.  **THIS COURT CORRECTLY INSTRUCTED THE JURY ON CIRCUMSTANTIAL EVIDENCE.**

This Court gave the following instruction on the utilization of direct and circumstantial evidence, without objection from either side:

> You may consider both direct and circumstantial evidence in deciding this case.  The law permits you to give equal weight to both, but it is for you to decide how much weight to give to any evidence.

T.P. at 5-18.[11]

Consequently, defendant's spurious assertion "one-line" assertion in his 2255 petition to the effect that "trial court erred by not instructing [sic] to effect that the jury may not convict on circumstantial evidence alone, under the proved circumstances are not only consistent with the hypothesis of guilt, but are irreconcicable with any other rational conclusion" is entirely contrary to law and without merit.

//

//

//

//

---

[11] This Court's instruction is substantially the same as the current Ninth Circuit version:

> You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide who much weight to give to any evidence.

Ninth Circuit instruction 3.8.

VIII.  **CONCLUSION**:

For the reasons set forth herein, defendant's 2255 petition should be denied in its entirety.

DATED: Honolulu, Hawaii, July 19, 2006.

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii


By /s/ Michael K. Kawahara
   MICHAEL K. KAWAHARA
   Assistant U.S. Attorney

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at his last known address:

Served by First Class Mail:

    LARON KEVIN KORTGAARD          July 18, 2006
    Prisoner #82467-022
    FCI Lompoc
    3600 Guard Road
    Lompoc, CA 93436

        Pro se


                             <u>/s/ Rowena N. Kang</u>